Oscar **MERAZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–95–00301–CR.

Court of Appeals of Texas,
El Paso.

July 24, 1997.

---

**15.** As both offenses were defined in the Penal Code at the time of the offense.

**16.** "Right ruling, wrong reason."

Rafael Salas, Salas & Salas, L.L.P., El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for Appellee.

Before LARSEN, McCLURE, and CHEW, JJ.

### OPINION

CHEW, Justice.

Appellant, Oscar Meraz, appeals from the trial court's denial of the relief requested in an Application for Post Conviction Writ of Habeas Corpus. Appellant challenges the validity of his 1992 guilty plea to the misdemeanor charge of unlawfully carrying a weapon. Appellant's first point of error complains that he was not represented by counsel at his plea hearing, and the second and third points of error concern the voluntariness of his plea of guilty. We affirm.

On November 5, 1992, seventeen-year-old Oscar Meraz, a Legal Permanent Resident of the United States, was brought down from an El Paso County jail cell for a "jail plea" before the Jail Magistrate. Charged with a Class A Misdemeanor of unlawfully carrying a weapon (a .22 caliber pistol), he was offered a sentence equal to his time served in exchange for his plea of guilty. He pled guilty and was released from jail.

More than two years later, the U.S. Immigration and Naturalization Service arrested Meraz, detained him under a $10,000 bond, and charged him as deportable on the sole basis of the November 1992 misdemeanor conviction for unlawfully carrying a weapon.[1] He filed an Application for Post Conviction Writ of Habeas Corpus on June 12, 1995, alleging that his 1992 firearm conviction was unlawful. His specific allegations were that the admonitions required by TEX.CODE CRIM. PROC.ANN. art. 26.13 (Vernon 1989), were not read to him; that he was not aware of the direct consequences of his plea, in particular, that he could be deported because of this conviction; and that he made his plea without the advice of counsel in violation of his constitutional right to counsel. The trial court below held a hearing on the application on September 1, 1995. Meraz testified that he signed a plea form that purports to waive most of his Constitutional trial rights and generally tracks the admonishments contained in Article 26.13 of the Code of Criminal Procedure after he pled guilty. The trial court denied the writ application because of "substantial compliance with Article 26.13 of the code of criminal procedure."

 The burden of proof in a misdemeanor post-conviction habeas corpus proceeding, as in its felony counterpart, is on the applicant, and the standard of proof is by a preponderance of the evidence. *Guzman v. State*, 841 S.W.2d 61, 67 (Tex.App.—El Paso 1992, pet. ref'd). Thus, Meraz has the burden of proving that he did not waive his right to counsel, or that he did not receive the proper admonishments on a guilty plea. See *Maddox v. State*, 591 S.W.2d 898, 902 (Tex. Crim.App. [Panel Op.] 1979), cert. denied, 447 U.S. 909, 100 S.Ct. 2994, 64 L.Ed.2d 859 (1980). Likewise, he has the burden of overcoming the presumption that the trial court's admonishments were adequate. See *Hardin v. State*, 471 S.W.2d 60, 63 (Tex.Crim.App. 1971).

First, we consider together, Meraz' second and third points of error which are essentially the same. He argues that his plea of guilty was not voluntary or knowing. The complaint is two-fold: first, that necessary admonitions were not properly made, and second, that he was never advised of the consequences of his plea of guilty.

Texas, and at least nine other states,[2] have legislatively precluded the acceptance of a guilty plea unless the trial court first advises an alien defendant of the possibility of adverse consequences under immigration and naturalization laws of a guilty plea and directing that the defendant may have the judgment vacated if such an admonishment was omitted. TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(4). Texas courts, however, have long and consistently held that the admonishments of Article 26.13 are only required in felony pleas, and we cite only a small sample of a long list of cases. *Berliner v. State*, 6 Tex.App. 181 (1879); *Johnson v. State*, 39 Tex.Crim. 625, 48 S.W. 70 (1898); *Empy v. State*, 571 S.W.2d 526, 529 (Tex.Crim.App. 1978); McGuire v. State, 617 S.W.2d 259, 261 (Tex.Crim.App. [Panel Op.] 1981); *Shipley v. State*, 828 S.W.2d 475, 480 (Tex.App.—El Paso 1992, pet. ref'd).

But despite its pedigree, the rule that Article 26.13 only applies to felonies "[does] not address the issue of whether due process requires a defendant to be admonished, from some source, as to the range of punishment prior to entering a plea of guilty to a misdemeanor offense." *Shipley*, 828 S.W.2d at 483 n. 2, (Barajas, C.J., dissenting). Such concerns are all the more compelling in view of the successive amendments made in 1996 to the Immigration and Nationality Act ("INA") which have widely expanded the grounds for the deportation or removal of non-citizens with criminal convictions and, specifically, for offenses now classified as "aggravated felon[ies]." 8 U.S.C.A. § 1101(a)(43)(West Supp.1997); Illegal Immigration Reform and

---

1. 8 U.S.C.A. § 1251(a)(2)(C)(West Supp.1997) provides that an alien is deportable if "at any time after entry is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any

weapon, part, or accessory which is a firearm or destructive device in violation of any law. . . ."

2. California, Connecticut, Colorado, Massachusetts, New Mexico, North Carolina, Ohio, Oregon, and Washington.

Immigrant Responsibility Act of 1996, (IIR-RAIRA), PUB.L. 104–208, 110 STAT. 3009 (September 30, 1996); Antiterrorism and Effective Death Penalty Act of 1996, PUB.L. 104–132, 110 STAT. 1214 (April 24, 1996).

When "aggravated felony" was first introduced as a deportable offense in 1988, it was limited to particularly serious drug trafficking offenses and murder. 8 U.S.C.A. § 1101(a)(43), as added by Section 7342, Anti–Drug Abuse Act of 1988, Act of Nov. 18, 1988, PUB.L. No. 100–690, 102 STAT. 4181, and as amended by Section 501 of the Immigration Act of 1990, Act of Nov. 29, 1990, PUB.L. No. 101–649, 104 STAT. 4978. The 1996 amendments to the INA have significantly expanded the list of offenses which are now defined as "aggravated felon[ies]" for purposes of the deportation or removal of non-citizens. Many offenses that Texas classifies as Class A misdemeanors now fall within the definition of "aggravated felony." For example, a conviction for a "crime of violence," which is defined by 18 U.S.C.A. § 16(a)(West 1993) as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," and for which the term of imprisonment is at least one (1) year is an "aggravated felony." 8 U.S.C.A. § 1101(a)(43)(F).

As a consequence, such Class A misdemeanors as Assault (TEX.PENAL CODE ANN. § 22.01), Criminal Mischief (TEX.PENAL CODE ANN. § 28.03(b)[3] ), Tampering With Identification Numbers (TEX.PENAL CODE ANN. § 31.11), Hindering Proceedings by Disorderly Conduct (TEX.PENAL CODE ANN. § 38.13), or Violation of Protective Order or Magistrate's Order (TEX.PENAL CODE ANN. § 25.07) are plainly within the federal definition of a "crime of violence." A non-citizen defendant convicted of such a misdemeanor offense and sentenced to one year imprisonment would be plainly amenable to deportation or removal from the United States as an "aggravated felon." Moreover, we also note that these same amendments to the immigration laws have eliminated virtually every form of discretionary relief from deportation or removal and most, if not all, judicial re-view of the deportation or removal proceedings.

■ Given the collateral consequences that are apt to flow from such pleas of guilty, we think that defendants charged in Texas with Class A misdemeanor offenses have a federal due process, and a Texas due course of law right to be admonished as to the immigration consequences of their pleas of guilty, separate and apart from Article 26.13. We note however, that most judges follow the commendable practice of admonishing defendants in misdemeanor cases.

■ In the instant case, the court below found that there had been "substantial compliance with Article 26.13 of the code of criminal procedure." Article 26.13(d) permits the court to make its admonitions either orally or in writing:

> The court may make the admonitions required by this article either orally or in writing. If the court makes the admonitions in writing, it must receive a statement signed by the defendant and the defendant's attorney that he understands the admonitions and is aware of the consequences of his plea. If the defendant is unable or refuses to sign the statement, the court shall make the admonitions orally. TEX.CODE CRIM.PROC.ANN. art. 26.13(d).

Since the trial court provided the admonitions in writing, and the defendant signed a statement, we find that this written document containing the admonishment fulfilled the requirements of Article 26.13(d). See *Smith v. State*, 857 S.W.2d 71, 74 (Tex. App.—Dallas 1993, pet. ref'd); *Walker v. State*, 843 S.W.2d 716, 717, (Tex.App.—Dallas 1992, pet. ref'd); *Munoz v. State*, 840 S.W.2d 69, 75 (Tex.App.—Corpus Christi 1992, pet. ref'd). The record simply fails to show by a preponderance of the evidence how, if at all, the magistrate failed to insure that Meraz was made aware of his rights and the consequences of his misdemeanor plea of guilty. Accordingly, we must overrule Meraz' second and third points of error.

■ Lastly, we consider Meraz' first point of error that his conviction is void because it was obtained in violation of his Sixth Amendment right to counsel. Clearly,

he was not represented by counsel at the plea hearing. Yet the record shows that he signed a three-part plea form that states, in the first part, that he understood his right to have an attorney and, in the third part, that "I hereby waive my right to counsel." A criminal defendant can waive the constitutional right to be represented by counsel. *Burgess v. State*, 816 S.W.2d 424, 430 (Tex. Crim.App.1991). But what Meraz argues is that the waiver, which he admits signing, was not voluntary and knowing.

In a factually similar situation, the Court of Criminal Appeals stated that a written and signed statement—"I do not wish to have a lawyer represent me at this hearing and will represent myself"—was sufficient to find a voluntary and knowing waiver of counsel. *Muniz v. State*, 851 S.W.2d 238, 255 (Tex. Crim.App.1993). The record here consists of Meraz's testimony, the written plea form, and affidavit of the then jail magistrate stating that it was possible that Meraz signed the form after pleading guilty. Meraz brought forward no statement of facts of the jail plea hearing, though it was suggested at oral argument that none exists.

The State argues that Meraz failed to meet his burden of proof and that his testimony alone is insufficient to overcome the presumption of regularity in the written plea papers that Meraz signed. Citing *Disheroon v. State*, 687 S.W.2d 332, 334 (Tex.Crim.App. 1985), and *Maddox v. State*, 591 S.W.2d 898 (Tex.Crim.App. [Panel Op.] 1979). Though we do not find Disheroon or Maddox to be particularly applicable to either the facts or the issue here, we do agree that Meraz has failed to meet his burden of proof on the limited, isolated issue of whether his waiver of counsel was voluntary. Meraz never testified about the voluntariness of his waiver, leaving only the signed waiver of counsel before us. Accordingly, we overrule Meraz' first point of error and affirm the judgment of the trial court.